UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ADAM JOSHUA MACKER,

      Plaintiff,

v.                                 Case No: 6:23-cv-1963-JSS-DCI

MESCHELLE NAYLOR, JASON
STICKLES, MICHAEL CHITWOOD,
DEPUTY IGO, BRANDON KING,
and PERDUE, BRANDON,
FIELDER, COLLINS & MOTT, LLP,

      Defendants.

_____/

## ORDER

After his initial complaint was dismissed, (*see* Dkt. 79), Plaintiff, proceeding pro se, filed an amended complaint, (*see* Dkt. 84). Defendants move to dismiss the amended complaint with prejudice as a shotgun pleading, for failure to state a claim, and for lack of subject matter jurisdiction. (*See* Dkts. 87 & 89.) Plaintiff opposes the motions. (*See* Dkts. 92 & 93.) For the reasons outlined below, the court grants the motions in part and denies them in part.

## FACTS[1]

The amended complaint appears to allege disparate claims related to an ongoing conspiracy to defraud. (*See* Dkts. 84, 84-1, & 84-2.) Given that the amended complaint contains details that do not directly pertain to the claims that Plaintiff asserts against

---

[1] The court accepts the well-pleaded factual allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc). The court also looks to state court records for minor background on the cases mentioned in the amended complaint. (*See* Dkt. 84 at 7–8.) *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

Defendants, (*see, e.g.*, Dkt. 84 at 21–27; Dkt. 84-1 at 1; Dkt. 84-2 at 1), the court disregards these details and focuses instead on the allegations germane to the claims against Defendants.

Regarding the conspiracy, Plaintiff asserts that "for at least the past [twenty-one] years," Defendant Perdue, Brandon, Fielder, Collins & Mott, LLP—which Plaintiff calls a "collection agency"—has conspired with law enforcement officers, court officials, and others to defraud former criminal defendants as purported judgment debtors. (Dkt. 84 at 6, 15, 22; Dkt. 84-1 at 1.) According to Plaintiff, "after court costs and fines are paid," Perdue files a fraudulent judgment instead of a satisfaction to increase its collections, waits years, and re-collects knowing that the purported judgment debtor "will not have a receipt for a money order so many years after the fact." (Dkt. 84 at 6.) The conspirators use the threat of driver's license suspension to get the purported judgment debtors to pay. (*Id.* at 6, 15.) They likewise cause, in Plaintiff's words, "the unlawful suspension of driving privileges, leading to . . . attacks by corrupt" officers and officials. (*Id.* at 6.) Plaintiff identifies three Volusia County Circuit Court criminal cases that Perdue allegedly used to defraud him out of money—case number 2011 002563 CFAWS, case number 2011 002740 CFAWS, and case number 2012 006567 MMAWS—as well as dozens of other cases that it allegedly used to defraud other individuals. (*Id.* at 7–8; Dkt. 84-1 at 2–63.) Plaintiff states that he has identified over sixty victims of Perdue's purported fraud. (Dkt. 84 at 15.)

Plaintiff pleaded no contest in his three cases in 2012 and incurred fines and

costs in each case as a result. *See* Volusia County Clerk of Circuit Court - Case Detail, https://ccms.clerk.org/caseCR_detail.aspx?d=3b353234353132&t=CF, https://ccms.clerk.org/caseCR_detail.aspx?d=33353232363132&t=CF, and https://ccms.clerk.org/caseCR_detail.aspx?d=353831342f3332&t=MM (last visited Nov. 22, 2024). (*See also* Dkt. 84 at 7; Dkt. 84-1 at 2–4.) Plaintiff alleges that he paid the fines and costs in each case. (Dkt. 84 at 7, 15.) He also contradictorily suggests that he received receipts in all cases, (*id.* at 15 ("All three cases were paid in full [ten] years prior *with receipts*." (emphasis added))), while stating that he received "no documentation" when he paid the fines and costs in two of the cases, (*id.* at 7, 15). As to the third case, case number 2012 006567 MMAWS, state court records reflect that Plaintiff paid fines and costs totaling $323 on October 18, 2012, and that receipt number 12100743 was issued to him that same day for his payment. (Dkt. 84-1 at 2.) However, Plaintiff claims, he was "forced to submit" a second payment of $18 in that case in January 2022. (*Id.*)

As to case number 2011 002740 CFAWS, Plaintiff claims that he paid the fines and costs, which also totaled $323, on March 21, 2012, but received a collection warning letter for $323 on September 15, 2021, and had his driver's license suspended in 2022 for nonpayment. (*Id.* at 3–4; Dkt. 84 at 15.) Plaintiff attaches the letter to the amended complaint. (Dkt. 84-1 at 4.) The letter warned Plaintiff that "[f]ailure to pay . . . within [ten] days . . . w[ould] result in a [j]udgment lien" and "referr[al] to a collection agency." (*Id.* at 4.) According to Plaintiff, although the letter "appear[ed]" to come from the Volusia County Clerk of Circuit Court, it was in fact Perdue's

"doing." (*Id.*; Dkt. 84 at 6.)  Plaintiff alleges that when he was "forced to" pay an additional $323 plus late fees in case number 2011 002740 CFAWS, Perdue "fraudulently satisfied" $1,064 in judgments in January 2022, but "the court docket only records a total $38[] distributed among[] all three cases combined." (Dkt. 84 at 7, 15.)  He further states that Perdue damaged his "nearly perfect credit" in late 2021 when it "reported [three] false judgments to the credit bureaus" related to his three cases. (*Id.*)  Specifically, he claims: "In the [second] quarter of 2021, I possessed almost an 850 [B]eacon [S]core[.]  [M]y credit is now below 600 because Volusia County [l]aw [e]nforcement [r]efused to properly safeguard my [c]ivil [r]ights provided by the U[.]S[.] Constitution." (*Id.* at 24.)  According to Plaintiff, while Perdue perpetrated its fraud on him, he "suffer[ed] from gang-stalking[,] . . . severe harassment[,] . . . slander, . . . and identity theft" and was "investigated by multiple [p]olice [o]fficers," whom Plaintiff conclusorily accuses of bribery. (*Id.* at 7.)  "By December 2022," this alleged persecution "became so debilitating [that Plaintiff] began investigating independently" and purportedly uncovered the conspiracy to defraud. (*Id.*; *accord id.* at 21–22.)

To support the claims in the amended complaint, Plaintiff describes encounters with five Defendants who work for the Volusia Sheriff's Office: Deputy Meshelle Naylor, Sergeant Jason Stickles, Sheriff Michael Chitwood, Deputy Christopher Igo, and Deputy Brandon King. (*Id.* at 9–13, 15–27.)  Plaintiff relates six encounters: an October 13, 2021 encounter involving Deputy Naylor and Sergeant Stickles, an August 2022 encounter involving Sergeant Stickles, a February 20, 2023 encounter involving

Sheriff Chitwood, a March 20, 2023 encounter involving Deputy Igo and Sergeant Stickles, an April 6, 2023 encounter involving Deputies Igo and King and Sergeant Stickles, and a May 5, 2023 encounter involving Sheriff Chitwood.  (*Id.*)

The October 2021 encounter purportedly began when Sergeant Stickles and Deputy Naylor plotted to "bring false charges against" Plaintiff after his driver's license was "unlawfully suspended because of blatant fraud and after multiple cocaine entrapment attempts failed."  (*Id.* at 15, 17.)  Allegedly, as part of the plot, the officers put out an all-points bulletin on Plaintiff's car based on the false "premise that [Plaintiff] was a drug dealer."  (*Id.* at 9.)  Deputy Naylor "hid out on a back road at school[-]release time in an undercover car, less than a mile from" Plaintiff's longtime residence and within mere miles of the police station where the officers worked.  (*Id.*) According to Plaintiff, the deputy knew that he was traveling from school with his child because Plaintiff's cell phone had been tapped for the plot, and her recording device captured her saying, "[They're] heading home[.]  [H]e's going about the speed limit."  (*Id.* at 15–16.)  Plaintiff states that Deputy Naylor did not read him his rights but "questioned [him] while holding [him] and [his] child at . . . gunpoint."  (*Id.* at 16.) Plaintiff further claims that Deputy Naylor "attempted three separate acts of coercion."  (*Id.*)

For seven minutes, Deputy Naylor spoke with Sergeant Stickles, who "advised her to mute [the] audio on her recording device."  (*Id.*)  She then entered Plaintiff's residence "with gloves on," purportedly to "coerce evidence that [did not] exist."  (*Id.*) During the encounter, she told Plaintiff's fourteen-year-old daughter that his religious

beliefs stemmed from "brain damage" caused by his "prior drug use"—"a common theme among drug addicts." (*Id.*)  According to Plaintiff, video footage from the officers' recording devices supports that Deputy Naylor "fabricated multiple statements and repeatedly contradicted herself" and that Sergeant Stickles "display[ed] seven unconscious body gestures perfectly synchronized with fabricated charges from [Deputy] Naylor." (*Id.* at 9–10.)  Ultimately, Deputy Naylor "charge[d Plaintiff] with fleeing and child neglect." (*Id.* at 16.)  Plaintiff takes issue with the charges, arguing that he "did what any responsible parent would while dealing with extreme harassment"—he "drove home the speed limit." (*Id.*)  Presumably to intimate ill-gotten gains, Plaintiff comments that Deputy Naylor "[p]urchased two properties in 2018 and 2022, each with [about $100,000] down" for "a total of $198,000 down," and that "[i]n the [fourth] quarter of 2022[]," Sergeant Stickles bought "two $700,000 properties in cash, hundreds of thousands over appraisal." (*Id.* at 9–10, 16.)

Although Deputy Naylor was more directly involved in the October 2021 encounter than Sergeant Stickles was, the encounter was allegedly "all at the [sergeant's] direction" because he has "repeatedly direct[ed] his subordinates to violate [Plaintiff's] constitutional rights." (*Id.* at 9–10.)  From the amended complaint, it seems that Sergeant Stickles's animus toward Plaintiff derives from the sergeant's "great friends[hip] with" a former neighbor of Plaintiff who had "made a habit of defaming [Plaintiff's] character," (*id.* at 10), "since [Plaintiff] terminated [the neighbor's] employment in 2012," (*id.* at 26).  Plaintiff characterizes Sergeant Stickles as "a primary orchestrator of" the alleged "acts against [Plaintiff] and [his] family."

(*Id.*)  Further, Sergeant Stickles purportedly "tell[s] people [that] he is the [l]aw."  (*Id.* at 23; *see id.* at 25 ("[A]ll involved . . . believe [that] they are above the law . . . ."); Dkt. 84-2 at 1 (showing a social-media post stating that Sergeant Stickles "brags [that he is] not above the law" but "is the law" (emphasis omitted)).)

In August 2022, Plaintiff had another encounter involving Sergeant Stickles, which related to an "attempt on [Plaintiff's] life" that had been made on the morning of May 26, 2022.  (Dkt. 84 at 10.)  In response to the attempt, Plaintiff called 9-1-1 and stayed on the call for approximately an hour while he travelled from South Daytona back to his home in DeBary, Florida.  (*Id.* at 10, 21.)  He was directed to file a report at his local police station.  (*Id.*)  Following the direction, he waited at his local police station "for an additional hour"; however, "no help . . . ever materialize[d]."  (*Id.*)  In August 2022, Plaintiff tried to file a police report about the attempt on his life, as well as identify theft, fraud, harassment, and stalking, but Sergeant Stickles "refused to let" him.  (*Id.* at 10.)

The February 20, 2023 encounter occurred around Sheriff Chitwood's office.  (*Id.* at 11.)  From November 8, 2022, to February 23, 2023, Plaintiff "submitted five complaints" to the Internal Affairs division of the Volusia Sheriff's Office.  (*Id.*)  Although his complaints allegedly held "undeniable proof of multiple law violations along with photo[]copies" of four separate victims of Perdue's purported fraud including Plaintiff, "[t]he department found no wrongdoing on all of [the] complaints."  (*Id.*)  On February 20, while on his way to submit his fourth complaint to Internal Affairs, Plaintiff, "[b]y chance, . . . found news crews outside Sheriff

Chitwood's office[] and asked" someone—the amended complaint does not say whom—"if [Plaintiff] could stay and watch." (*Id.*)  The amended complaint does not provide the answer that Plaintiff received.  (*See id. passim.*)  Upon arrival, Sheriff Chitwood "came down, looked directly into [Plaintiff's] eyes, and asked, 'What are you doing here?'" (*Id.* at 11.)  Plaintiff states that Sheriff Chitwood spoke "with dominance in a concerted effort to intimidate" and that "it was incredibly clear" that the sheriff "knew exactly who [Plaintiff] was with just a glance." (*Id.*)  According to Plaintiff, because Sheriff Chitwood "had no reason to know" him but "was astonishingly well aware" of him, Plaintiff "realiz[ed that] the sheriff was intimately affiliated with [Plaintiff's] attackers." (*Id.*)  Also, at some point (or points), Plaintiff "email[ed] Sheriff Chitwood close to [twenty] times, all with no response." (*Id.* at 18.)

The March 20, 2023 encounter allegedly began when Sergeant Stickles "instructed Deputy Igo to arrest" Plaintiff on "fabricated charges." (*Id.* at 17.)  A man had "retrieved [Plaintiff's] stolen motorcycle," "delivered it to [Plaintiff's] residence," and "alerted the authorities to withdraw" the all-points bulletin about it.  (*Id.* at 12, 17.)  "Multiple police officers," including Deputy Igo, "arrived at [Plaintiff's] residence" and "bang[ed] on doors." (*Id.* at 12.)  Plaintiff alleges that Deputy Igo tried for seventy-five minutes to "apprehend [Plaintiff] on [Plaintiff's] own property," in violation of Plaintiff's constitutional rights.  (*Id.*)  Given Plaintiff's view that the officers were engaging in "underhanded tactics," Plaintiff locked himself and his children inside their home and called 9-1-1 "approximately six times" while his "daughter cr[ied] frantically throughout" the encounter.  (*Id.*)  At Sergeant Stickles's

- 8 -

instruction, Deputy Igo impounded Plaintiff's motorcycle and arrested the man who had retrieved the motorcycle "for dealing in stolen property." (*Id.* at 17.)  Plaintiff claims that he "could never get [his] motorcycle out of impound because" he would have "had to remove" the all-points bulletin and "Volusia [l]aw [e]nforcement will not allow that." (*Id.* at 12.)

According to Plaintiff, the April 6, 2023 encounter began when, at Sergeant Stickles's instruction, Deputies King and Igo entered Plaintiff's residence "without a warrant for [the] residence." (*Id.* at 12–13, 17.)  The day before, Plaintiff claims, an attorney whom Plaintiff had been "repeatedly messaging" for three days "intentionally led [him] to believe" that he "did not have to appear in court." (*Id.* at 12–13, 22.)  Presumably, given that a warrant was issued for Plaintiff's failure to appear, this advice was incorrect, and Plaintiff relied on it and did not appear. (*Id.* at 12–13.)  Plaintiff states that around midnight on April 6, Deputies King and Igo snuck onto Plaintiff's property "without a warrant for [his] residence," "kicked [his] front door down busting a dead bolt out of a solid wooden door," "assaulted" him, and "charged [him] with resisting." (*Id.* at 12–13, 17.)  According to Plaintiff, "a week later," he was "unethically denied" bond, and because he needed to "be home to care for [his] children," he "was coerced into accepting a plea deal on two cases" with no evidence, making him "a falsely convicted felon." (*Id.*)

Finally, the May 2023 encounter occurred when Plaintiff attempted to submit a sixth complaint—about the April 6, 2023 encounter—with Internal Affairs. (*Id.* at 11, 18–19.)  Plaintiff claims that he was prohibited from submitting the complaint on

Sheriff Chitwood's orders.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint against eleven Defendants, including the six current Defendants, under 18 U.S.C. §§ 241 and 1341 and 42 U.S.C. § 1983 for the conspiracy and encounters described above and for separate incidents involving the five other Defendants.  (Dkt. 1.)  The six current Defendants moved to dismiss the initial complaint as a shotgun pleading and for failure to state a claim—with Perdue also moving to dismiss it for lack of subject matter jurisdiction—and these motions were referred to the magistrate judge for a recommendation.  (Dkts. 44 & 45.)  The magistrate judge recommended that the motions to dismiss be granted in part and denied in part.  (Dkt. 55.)  Specifically, the magistrate judge recommended that the claims under sections 241 and 1341 be dismissed with prejudice because such criminal statutes do not provide private causes of action and that the claims under section 1983 be dismissed on shotgun pleading grounds with leave to amend.  (*Id.* at 4–9.)  The court adopted the magistrate judge's recommendation in full and permitted Plaintiff to file an amended complaint to "correct[] the deficiencies explained" in the recommendation.  (Dkt. 79 at 3–4.)  The court instructed Plaintiff that the amended complaint "shall not include causes of action for violations of 18 U.S.C. §§ 241[ and] 1341 that are dismissed with prejudice."  (*Id.* at 4.)

Plaintiff timely filed an amended complaint.  (Dkt. 84.)  The amended complaint brings claims against Perdue, Deputy Naylor, Sergeant Stickles, Sheriff Chitwood, Deputy Igo, and Deputy King and states that the five other Defendants

from the initial complaint "are not identified in this [a]mended [c]omplaint." (*Id.* at 3.)  Plaintiff sues Perdue under 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments (due process) and the Eighth Amendment (cruel and unusual punishment and excessive fines), under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968, and under 18 U.S.C. §§ 1341 and 1957.  (Dkt. 84 at 15.)  Plaintiff sues Deputy Naylor under 42 U.S.C. § 1983 for violations of the Fourth Amendment (unreasonable search), the Eighth Amendment (cruel and unusual punishment and excessive premeditated force), and the Fourteenth Amendment (due process and unlawful investigation) and under 18 U.S.C. § 201.  (Dkt. 84 at 15–16.)  Plaintiff sues Sergeant Stickles under 42 U.S.C. § 1983 for violations of the Fourth Amendment (unreasonable search), the Fifth Amendment (due process and unfair treatment during a criminal investigation), the Eighth Amendment (cruel and unusual punishment and inhumane treatment), and the Fourteenth Amendment (due process and unlawful investigation) and under 18 U.S.C. § 201.  (Dkt. 84 at 17–18.)  Plaintiff sues Sheriff Chitwood under 42 U.S.C. § 1983 for violations of the Fifth Amendment (due process and unfair treatment during a criminal investigation), the Eighth Amendment (cruel and unusual punishment and inhumane treatment), and the Fourteenth Amendment (due process and unlawful investigation and equal protection and intentionally ignoring blatant criminal violations).  (Dkt. 84 at 18–19.)  Plaintiff sues Deputy Igo under 42 U.S.C. § 1983 for violations of the Fourth Amendment (two unreasonable searches), the Fifth Amendment (due process and unfair treatment during a criminal investigation), the Eighth Amendment (cruel

and unusual punishment and inhumane treatment/excessive force), and the Fourteenth Amendment (due process and unlawful investigation). (Dkt. 84 at 19–20.) Plaintiff sues Deputy King under 42 U.S.C. § 1983 for violations of the Fourth Amendment (unreasonable search), the Fifth Amendment (due process and unfair treatment during a criminal investigation), the Eighth Amendment (cruel and unusual punishment and inhumane treatment/excessive force), and the Fourteenth Amendment (due process and unlawful investigation). (Dkt. 84 at 20.)

## APPLICABLE STANDARDS

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The party seeking to invoke the court's jurisdiction "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1) and *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). If a court lacks jurisdiction, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause." *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1301 (11th Cir. 2022) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)). "Federal question jurisdiction exists only when the 'well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)). A federal court

"may dismiss a federal question claim for lack of subject matter jurisdiction only if[] (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'[] or (2) 'such a claim is wholly insubstantial and frivolous.'" *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). A claim is wholly insubstantial and frivolous in this context only if the claim "has no plausible foundation" or "a prior Supreme Court decision clearly forecloses the claim." *Id.* (quotation omitted).

Although courts "give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se plaintiffs are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))). That said, courts are "reluctant to approve a dismissal" on subject matter jurisdiction grounds "where the plaintiff, as in this case, is proceeding pro se." *Simanonok v. Simanonok*, 787 F.2d 1517, 1520 (11th Cir. 1986).

A federal court "possess[es] an inherent power to" ensure that the parties before it "comply with a court order." *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1126 (11th Cir. 2017). "A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case." *Id.* (quoting *Degen v. United States*, 517 U.S. 820, 827 (1996)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count." *Id.*  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.  A court may dismiss a complaint as a shotgun pleading only "where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Generally, when analyzing a motion to dismiss for failure to state a claim, a court considers only the four corners of the complaint and the exhibits attached to the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023).

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)).

## ANALYSIS

The court first addresses the issue of its subject matter jurisdiction, then determines whether the amended complaint is subject to dismissal on shotgun pleading grounds, and finally examines whether the amended complaint fails to state a claim.

### 1. Subject Matter Jurisdiction

Perdue maintains that the amended complaint should be dismissed for lack of subject matter jurisdiction as facially insubstantial and frivolous because the criminal statutes cited therein do not supply private causes of action, the section 1983 claims do not adequately allege that Perdue is a state actor, and the civil RICO claim does not plead "any of the elements necessary" for a civil RICO claim. (Dkt. 89 at 7–12.) The continuing vitality of the "wholly insubstantial and frivolous" jurisdictional standard has been called into question. *See Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1041 (11th Cir. 2022) (Newsom, J., concurring) ("[T]he Supreme Court has continued to indicate some doubt about the propriety of the 'wholly insubstantial and frivolous' standard as a jurisdictional rule."). Nonetheless, under that standard, "[t]he test of federal jurisdiction is not whether the cause of action is one on which the claimant can recover" but "whether the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction." *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1494 (11th Cir. 1990) (en banc) (cleaned up).

Here, the court cannot conclude that it lacks subject matter jurisdiction, as the claims in the amended complaint are not "so patently without merit," *id.*, especially considering that Plaintiff is proceeding pro se, *see Simanonok*, 787 F.2d at 1520. The standard is "onerous," and "the category of claims that are 'wholly insubstantial and frivolous' is exceedingly narrow." *Rubinstein v. Yehuda*, 38 F.4th 982, 993 (11th Cir. 2022) (quotation omitted); *accord id.* at 995 (holding that although a RICO count's pleading deficiencies warranted dismissal for failure to state a claim, they did not put the count "in the extreme category of cases so frivolous that they fail to invoke the

court's jurisdiction"); *Thomas v. BMO Harris Bank*, No. 23-00224-TFM-B, 2024 U.S. Dist. LEXIS 10063, at *10–11 (S.D. Ala. Jan. 19, 2024) (reasoning that because some of the arguments for dismissal on subject matter jurisdiction grounds "arguably depend[ed] on [the plaintiff's] procedurally deficient pleading or relate[d] to the merits of his claim," dismissal for failure to state a claim was "the better approach"), *report and recommendation adopted by* 2024 U.S. Dist. LEXIS 21722, at *1 (S.D. Ala. Feb. 7, 2024). Accordingly, the court does not dismiss the amended complaint for lack of subject matter jurisdiction.

### 2. Shotgun Pleading

Defendants contend that the amended complaint should be dismissed as a shotgun pleading because it "intermingles allegations against . . . Defendants without demonstrating how [the allegations] are related, if at all, to any cause of action being alleged," "is not broken down into separately numbered paragraphs," "does not contain separate counts or claims for relief," "is filled with rambling, incoherent sentences that are packed full of irrelevant information, unjustified inferences, and legal conclusions," (Dkt. 89 at 13–14), "is a disjointed and confusing litany of vague claims of fraud and conspiracy," and "is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (Dkt. 87 at 2–5). The court agrees that the amended complaint is unclear. However, a court may dismiss a complaint as a shotgun pleading only "where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Weiland*, 792 F.3d at 1325 (quoting *Anderson*, 77 F.3d at 366). That situation is not

present here.

Although the "Underlying Facts to My Claim" and "Irreparable Injury" parts of the amended complaint and exhibits attached to the pleading, for example, include extraneous details, (*see, e.g.*, Dkt. 84 at 21–24 (allegations concerning Plaintiff's former girlfriend and late friend and complaints about lawyers and judges); Dkt. 84-1 at 1 (allegations concerning Plaintiff's former girlfriend); Dkt. 84-2 at 1 (same)), the "Statement of Claim" part provides clear legal and factual bases for each Defendant, (*see* Dkt. 84 at 15–20).[2]  Further, Defendants have understood the amended complaint well enough to argue that the counts directed at them fail to state claims for relief.  (*See* Dkt. 87 at 5–12; Dkt. 89 at 12–16.)  *See Inform Inc. v. Google LLC*, No. 21-13289, 2022 U.S. App. LEXIS 24107, at *12–13 (11th Cir. Aug. 26, 2022) (holding that even though a complaint was "certainly long" and was not "a paragon of clarity," it was not a shotgun pleading because its form "did not prevent the district court or . . . defendants from understanding the basis of" the claims); *see also Jean Charles v. Geo Grp. Inc.*, No. 22-13891, 2024 U.S. App. LEXIS 9021, at *6–7 (11th Cir. Apr. 15, 2024).[3]  Accordingly, the court does not dismiss the amended complaint as a shotgun

---

[2] The court therefore largely limits its consideration to the "Statement of Claim" part of the amended complaint.  Should Plaintiff object to this practice by pointing to allegations outside this part to show that he has stated a claim for relief, the court concludes that the amended complaint is indeed subject to dismissal as a shotgun pleading given its overall lack of clarity.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (holding that a complaint was "undoubtedly" a shotgun pleading when it was "rife with immaterial factual allegations" and "include[d] numerous vague and conclusory allegations," and thus, discerning no abuse of discretion in the dismissal of the complaint).

[3] In *Jean Charles*, the district court dismissed the first amended complaint as a shotgun pleading because "each of the two counts incorporated by reference every allegation of the entire pleading."  2024 U.S. App. LEXIS 9021, at *3 (internal quotation marks omitted).  The plaintiff then filed a second amended complaint that was "essentially unchanged" from the first amended complaint.  *Id.* at *3–4.  The district court dismissed the second amended complaint as a shotgun pleading, highlighting three deficiencies.  *Id.* at *4–5.  First, one count "commingled distinct transactions and occurrences."  *Id.* at

pleading.  That said, given the amended complaint's obvious lack of clarity, the court

concludes this order with directives Plaintiff must follow to clarify his claims.

### 3. Failure to State a Claim

In conducting the analysis for failure to state a claim, the court discusses the

claims brought under the criminal statutes, the RICO Act, and section 1983 in turn.

### a. Criminal Statutes

Plaintiff refers to 18 U.S.C. §§ 1341 and 1957 in his "Statement of Claim"

against Perdue.  (Dkt. 84 at 15.)  Because Plaintiff brings a civil RICO claim against

Perdue, (*see id.*), he may be referring to these criminal statutes as predicate offenses for

that claim.  *See* 18 U.S.C. § 1961(1)(B) (defining "racketeering activity" for RICO

purposes to include "any act which is indictable under" section 1341 or 1957).

However, to the extent that Plaintiff asserts claims under sections 1341 and 1957

directly, these criminal statutes do not provide for private causes of action.  *See Marfut*

*v. City of N. Port*, No. 09-13790, 2010 U.S. App. LEXIS 12365, at *5 (11th Cir. June

16, 2010) ("There is no private cause of action under 18 U.S.C. § 1341, a criminal

statute prohibiting mail fraud." (citing *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th

Cir. 1977))); *Aaronson v. Kangarani*, No. 1:19-cv-00468-CL, 2019 U.S. Dist. LEXIS

---

*4 (internal quotation marks omitted).  Second, it was unclear whether the other count incorporated
immaterial allegations given the numbering of the complaint's paragraphs.  *Id.* at *4–5.  Third, the
complaint "ma[de] allegations against [the d]efendants collectively without identifying which
[d]efendant was responsible for which acts or omissions."  *Id.* at *5 (internal quotation marks omitted).
The Eleventh Circuit held that "the district court abused its discretion by dismissing [the] first and
second amended complaints as shotgun pleadings."  *Id.* at *6.  The Eleventh Circuit explained that
"[d]espite the pleading deficiencies identified by the [district] court, it [wa]s not 'virtually impossible'
to understand [the] claims or 'which allegations of fact [we]re intended to support which claim(s) for
relief.'"  *Id.* at *6–7 (quoting *Weiland*, 792 F.3d at 1325).

127890, at *7–8 (D. Or. June 20, 2019) ("A number of federal courts have found that federal money laundering statutes, codified at 18 U.S.C. §§ 1956 and 1957, do not provide for a private right of action." (collecting cases)), *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 127411, at *1 (D. Or. July 31, 2019).  Accordingly, any causes of action asserted directly under sections 1341 and 1957 fail to state claims for relief and are dismissed with prejudice on futility grounds.  *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102–03 (11th Cir. 2021) (affirming a dismissal with prejudice on futility grounds when the claims as amended would still have been subject to dismissal).  Moreover, any cause of action brought directly under section 1341 contravenes the court's previous directive that Plaintiff "shall not include causes of action for violations of" section 1341 in an amended complaint because Plaintiff's section 1341 claims were "dismissed with prejudice." (Dkt. 79 at 4.)  The failure to comply with the directive furnishes an independent basis for dismissal of any section 1341 claims.  *See Foudy*, 845 F.3d at 1126.

Plaintiff also sues Deputy Naylor and Sergeant Stickles under 18 U.S.C. § 201. (Dkt. 84 at 15, 17.)  This criminal statute likewise does not supply a private cause of action.  *See Postell v. Fifth Third Bank*, No. 6:13-cv-60-Orl-36TBS, 2013 U.S. Dist. LEXIS 69146, at *3–4 (M.D. Fla. Apr. 26, 2013) ("18 U.S.C § 201 is a criminal statute that does not provide individuals with a private right of action." (collecting cases)), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 69143, at *2 (M.D. Fla. May 15, 2013).  Thus, the section 201 counts fail to state claims for relief and are dismissed with prejudice on futility grounds.  *See Marrache*, 17 F.4th at 1102–03.

### b. RICO Act

As mentioned above, Plaintiff asserts a civil RICO claim against Perdue. (*See* Dkt. 84 at 15.) The plaintiff in a civil RICO case "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Further, the "plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Id.* at 1215. Here, 18 U.S.C. §§ 1341 and 1957 appear to provide the predicate offenses. (*See* Dkt. 84 at 15.) *See* 18 U.S.C. § 1961(1)(B). Mail fraud under section 1341 "occurs when a person . . . intentionally participates in a scheme to defraud another of money or property and . . . uses the mails . . . in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quotation omitted). Money laundering under section 1957 occurs when a person "knowingly engag[es] or attempt[s] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 derived from specified unlawful activity." *United States v. Elso*, 422 F.3d 1305, 1309 n.6 (11th Cir. 2005). Simplified, section 1957 defines a "monetary transaction" as a "deposit, withdrawal, transfer, or exchange" of money "by, through, or to a financial institution," 18 U.S.C. § 1957(f)(1), such as a bank, *see id.*; 18 U.S.C. § 1956(c)(6); 31 U.S.C. § 5312(a)(2); 12 U.S.C. § 3101(7).

"When a RICO claim is based on predicate acts involving fraud, those predicate

- 21 -

acts must be pleaded with particularity, in accordance with Fed. R. Civ. P. 9(b)."

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta*, 530 F.3d 1339, 1355

(11th Cir. 2008).  "RICO predicate acts not sounding in fraud need not . . . be pleaded

with . . . particularity . . . unless the same misrepresentation forms the basis of both the

fraud and non-fraud claim."  *Id.* at 1355–56.  Here, Plaintiff must plead section 1341

acts with particularity.  *See Am. Dental*, 605 F.3d at 1291 (applying the heightened

particularity standard to predicate acts of mail fraud); *State Farm Mut. Auto. Ins. Co. v.

Lewin*, 535 F. Supp. 3d 1247, 1262 (M.D. Fla. 2021) ("Here, the alleged predicate acts

are violations of [s]ection 1341 of the federal mail fraud statute.  Because [the

p]laintiffs' RICO claims are based on the predicate acts of mail fraud, their RICO

allegations must comply with Rule 9(b)'s heightened standard." (citations omitted)).

However, Plaintiff need not plead section 1957 acts with particularity unless they have

the same basis as section 1341 acts.  *See Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321,

1352 (M.D. Fla. 2019) ("While allegations of . . . money laundering violations

normally need not satisfy the heightened particularity standard in Rule 9(b), they may

be held to that standard when the non[-]fraud claims require proof of the same

misrepresentation underlying a fraud claim alleged elsewhere in the complaint.").

That said, aside from conclusorily claiming that "Perdue is guilty of money

laundering," (Dkt. 84 at 6), and citing the federal money laundering statute, (*id.* at 1,

14–15), the amended complaint does not contain allegations of money laundering, (*see

id. passim*; *see also* Dkts. 84-1 & 84-2).  Plaintiff does not allege that Perdue knowingly

deposited, withdrew, transferred, or exchanged money (or attempted to do so) by,

through, or to a financial institution.  (*See* Dkts. 84, 84-1, & 84-2.)  Consequently, Plaintiff does not "put forward enough facts with respect to" section 1957 acts "to make [them] independently indictable" as crimes.  *See Cisneros*, 972 F.3d at 1215.

Plaintiff is thus left with section 1341 acts as RICO predicates, and he must plead these acts with particularity.  *See Am. Dental*, 605 F.3d at 1291; *State Farm*, 535 F. Supp. 3d at 1262.  Plaintiff pleads with particularity only one section 1341 act—the mailing of the September 15, 2021 letter, seemingly from the Volusia County Clerk of Circuit Court but really from Perdue, that falsely informed Plaintiff of a $323 past due financial obligation related to case number 2011 002740 CFAWS.  (Dkt. 84 at 6–7, 15; Dkt. 84-1 at 3–4.)  Plaintiff generally alleges that Perdue followed "a very similar pattern" in other cases, (Dkt. 84 at 6–8), and he attaches to his amended complaint numerous annotated court records supporting his fraud theory in other cases, (Dkt. 84-1 at 5–63).  However, he does not plead with particularity the section 1341 acts, that is, the use of the mails in furtherance of the scheme to defraud.  *See Am. Dental*, 605 F.3d at 1290.  Additionally, the amended complaint states that Perdue "fraudulently reported [three] false judgments to the credit bureaus in [his] name" but does not state that Perdue used the mails when doing so.  (Dkt. 84 at 7, 15.)  Therefore, these statements do not "put forward enough facts with respect to" the fraudulent reports "to make [them] independently indictable" as section 1341 offenses.  *See Cisneros*, 972 F.3d at 1215; *Am. Dental*, 605 F.3d at 1290.  With just one predicate act, the mailing of the September 15, 2021 letter, Plaintiff does not state a civil RICO claim.  *See Cisneros*, 972 F.3d at 1211 (requiring "at least two predicate acts").

The court agrees with Perdue that Plaintiff also fails to allege other RICO elements, including the existence of an enterprise. (Dkt. 89 at 16.) The amended complaint describes Defendant Perdue as the "[c]riminal [e]nterprise." (Dkt. 84 at 4; *accord* Dkt. 84-1 at 1 (calling Perdue "a criminal enterprise acting as a national collection agency" (cleaned up)).) However, "to state a civil RICO claim, a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016). "[T]he racketeering enterprise and the defendant must be two separate entities." *Id.*

To the extent that the amended complaint raises an association-in-fact theory whereby the enterprise consists of Perdue and those persons with whom it has allegedly conspired to defraud, the amended complaint does not clearly plead the three features of the association-in-fact enterprise: the enterprise's "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," *Boyle v. United States*, 556 U.S. 938, 946 (2009). For example, as to purpose, the amended complaint states that Perdue has "work[ed] with faulty police officers in a huge money-making scandal," (Dkt. 84 at 6), and at the same time, the amended complaint describes the "primary goal" of the complained-about group as ensuring that Plaintiff's "peace [i]s forever stripped away," (*id.* at 25). The former statement suggests a general money-making purpose for the enterprise consistent with other claims about the scheme to defraud while the latter description suggests a purpose specific to Plaintiff's suffering. These allegations pose three problems. First, Plaintiff must be clear about the alleged purpose of the

enterprise—is it the former, the latter, both, neither? *See Rothman v. Bank of Am. Corp.*, No. 8:23-cv-2969-SDM-NHA, 2024 U.S. Dist. LEXIS 194359, at *14–15 (M.D. Fla. Oct. 25, 2024) (dismissing a civil RICO claim because the plaintiff "fail[ed] to clearly allege the common purpose of" the association-in-fact enterprise (quotation omitted)). Second, a general money-making purpose does not suffice to state a civil RICO claim. *See Cisneros*, 972 F.3d at 1211 ("An abstract common purpose, such as a generally shared interest in making money, [does] not suffice.  Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." (citations omitted)).  Third, the amended complaint does not plausibly allege that the enterprise—which purportedly victimized over sixty individuals, whose identities Plaintiff discovered through "a comprehensive investigation," (Dkt. 84 at 15, 22)—did so just to cause Plaintiff suffering.  *See Cisneros*, 972 F.3d at 1214 (explaining that a civil RICO claim based on an association-in-fact theory "may only proceed if" it is supported by "facts . . . that plausibly yield the inference that . . . the . . . participants in the alleged . . . enterprise acted with the common purpose").

For all the above reasons, the civil RICO claim in the amended complaint is dismissed.  Perdue makes a cursory argument that all claims against it should be dismissed with prejudice because "further amendment would be futile."  (Dkt. 89 at 16; *accord id.* at 2.)  However, because Perdue does not explain why further amendment would be futile, the court dismisses the RICO claim without prejudice.  *See United*

*States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024) ("A party abandons an issue when [it] makes only passing references to [the issue] or raises it in a perfunctory manner without supporting arguments and authority." (quotation omitted)).

### c. Section 1983

"To succeed, a section 1983 plaintiff must show that the . . . [C]onstitution of the United States w[as] violated by state action." *Conlogue v. Shinbaum*, 949 F.2d 378, 381 n.5 (11th Cir. 1991) (emphasis omitted).  First, the court discusses state action. Then, the court examines whether Plaintiff has stated a claim for relief as to each constitutional cause of action asserted against a state actor: unlawful investigation, unfair treatment during a criminal investigation, inhumane treatment, intentionally ignoring blatant criminal violations, cruel and unusual punishment, due process, unreasonable search, excessive force, and equal protection.[4]  Finally, the court decides whether to grant Plaintiff leave to amend his section 1983 claims.

State Action:

"A successful section 1983 action requires that the plaintiff show []he was deprived of a federal right by a person acting under color of state law." *Almand v.*

---

[4] As explained herein, the amended complaint does not adequately allege that Perdue is a state actor. Because the only claim for excessive fines in the amended complaint is asserted against Perdue, (*see* Dkt. 84 at 15), the court does not reach whether the amended complaint fails to state a claim for excessive fines.  Nevertheless, if Plaintiff asserts a claim for excessive fines in his second amended complaint, he shall consider that a fine is constitutionally excessive "if it is grossly disproportional to the gravity of [the] defendant's offense" and that courts "determine whether a fine is grossly disproportional by considering (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed[,] (2) other penalties authorized by the legislature (or the Sentencing Commission)[,] and (3) the harm caused by the defendant." *United States v. Sperrazza*, 804 F.3d 1113, 1126-27 (11th Cir. 2015) (quotation omitted).  Accordingly, when asserting a claim for excessive fines, Plaintiff shall include enough information about the criminal offenses giving rise to the complained-of fines for the court to consider these three topics.

*DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997).  "A person acts under color of state law when [it] acts with authority possessed by virtue of [its] employment with the state."  *Id.*  As employees of the Volusia Sheriff's Office, the five non-Perdue Defendants do not dispute that they acted under color of state law; rather, they contend that Plaintiff insufficiently alleges that they violated his constitutional rights.  (*See* Dkt. 87.)  In contrast, Perdue asserts: "Plaintiff has not alleged any facts to suggest that Perdue is a state actor or that it acted under color of state law."  (Dkt. 89 at 9.)

"Only in rare circumstances can a private party" like Perdue "be viewed as a 'state actor' for section 1983 purposes."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  For Perdue to be liable under section 1983, "one of the following three conditions [must be] met": (1) the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution," (2) Perdue "performed a public function that was traditionally the exclusive prerogative" of the government, or (3) the government "so far insinuated itself into a position of interdependence with" Perdue that the government "was a joint participant in the enterprise."  *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (alteration adopted and quotation omitted).

The amended complaint identifies Perdue as the principal conspirator, (*see* Dkt. 84 at 6), and conclusorily alleges that Perdue "is deeply entangled with the state court system, holding unethical power over many public officials," (Dkt. 84-1 at 1).  Thus, the amended complaint portrays the government not as coercing Perdue but as acquiescing to Perdue such that the first condition is not met.  *See Blum v. Yaretsky*, 457

U.S. 991, 1004 (1982) ("[A] [s]tate normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate. Mere approval of or acquiescence in the initiatives of a private party is not sufficient . . . ." (citations omitted)).

The function that Perdue purportedly performed was of a "[c]ollection [a]gency." (Dkt. 84 at 4; *accord id.* at 6; Dkt. 84-1 at 1 (stating that Perdue "act[s] as a national collection agency" (cleaned up)).) This function was not "traditionally the exclusive prerogative" of the government. *Rayburn*, 241 F.3d at 1347; *see Kettle v. N.Y. State Thruway Auth.*, No. 19-CV-504, 2019 U.S. Dist. LEXIS 212931, at *43–45 (W.D.N.Y. Dec. 5, 2019) (finding no state action in a case about "administering and collecting tolls and associated charges" when "the functions assigned by the [state] to the[] private defendants [we]re common accounting and collection functions traditionally performed by governments in-house but not exclusively," and reasoning that the "collection activities [we]re analogous to administering insurance payments noted by the *Manhattan Community Access* Court as an example of a non-state action function" (citing *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 810 (2019))), *report and recommendation adopted in relevant part by* 2020 U.S. Dist. LEXIS 97646, at *5 (W.D.N.Y. June 2, 2020); *Cohen v. World Omni Fin. Corp.*, 2009 U.S. Dist. LEXIS 93416, at *11 (S.D. Fla. Oct. 5, 2009) (rejecting "the notion that tax collection in [and] of itself by a private entity transforms [the] entity into a state actor"). Thus, the second condition is not met.

To satisfy the third condition, Perdue and the government "must be intertwined in a symbiotic relationship" involving the "specific conduct of which [P]laintiff complains." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003) (quotation omitted). Plaintiff's conclusory allegation of Perdue's "deep[] entangle[ment] with the state" regarding the complained-of conduct, (Dkt. 84-1 at 1), suggests an attempt at satisfying this condition for state action. (*Accord, e.g.*, Dkt. 84 at 6 (conclusory allegation of Perdue "working with faulty police officers"); *id.* at 15 (conclusory allegation of Perdue "working in illicit partnership with" a named limited liability company); *id.* at 22 (conclusory allegations of a named judge acting "due to the influence of Perdue and associates" and of a drug dealer "working in conjunction with Perdue and associates").) However, conclusory allegations cannot overcome motions to dismiss absent supporting factual allegations sufficient to make the conclusions plausible. *See Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 773 (11th Cir. 2016) (holding that the plaintiff "failed to state a claim under [section] 1983" when he "did not allege any contacts between the private parties and the state actors . . . that could plausibly support a conclusion that they had reached an understanding to deny [the plaintiff] his rights" (quotation omitted)); *Johnson v. L. Offs. of Marshall C. Watson, PA*, 348 F. App'x 447, 448 (11th Cir. 2009) ("[C]onclusory allegations that the defendants conspired with a [state court employee] were not enough to transform the defendants into state actors."). Because Plaintiff does not plausibly plead state action for his section 1983 claims against Perdue, those claims are dismissed, and the court does not discuss the claims any further, except as to leave to amend.

Unlawful Investigation, Unfair Treatment During a Criminal Investigation,

Inhumane Treatment, and Intentionally Ignoring Blatant Criminal Violations:

Plaintiff sues the five Volusia Sheriff's Office Defendants for constitutional violations relating to unlawful investigation, unfair treatment during a criminal investigation, inhumane treatment, and intentionally ignoring blatant criminal violations. (Dkt. 84 at 16–20.) To the extent these violations overlap with Plaintiff's allegations involving cruel and unusual punishment, due process, unreasonable search, excessive force, and equal protection, the court discusses those allegations below. To the extent the violations refer to other constitutional causes of action, the amended complaint inadequately identifies the rights involved in those causes of action and thus fails to state a claim. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) ("A constitutional claim brought pursuant to [section] 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019))).

Cruel and Unusual Punishment:

Plaintiff sues the five Volusia Sheriff's Office Defendants for cruel and unusual punishment. (Dkt. 84 at 16–20.) A typical section 1983 claim concerning the Eighth Amendment's prohibition against cruel and unusual punishment involves conduct by prison officials or inside prisons. *See Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) ("A *prison official* violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm

to an inmate who suffers injury." (emphasis added)); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) ("Generally speaking, *prison conditions* rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." (emphasis added) (quotation omitted)); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("Under the Eighth Amendment, *prisoners* have a right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care and a right to be protected from self-inflicted injuries, including suicide." (emphasis added) (citations omitted)).  This is because "the [s]tate does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *accord Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994) ("Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees.").  Although the amended complaint describes Plaintiff as falsely convicted of crimes, it does not show that Plaintiff was a prisoner within the meaning of the Eighth Amendment during the encounters when Plaintiff was subjected to the allegedly cruel and unusual punishment, nor does it explain how the Eighth Amendment is otherwise implicated in the claims for cruel and unusual punishment. (*See* Dkt. 84.)  Accordingly, the amended complaint fails to state such a claim.

Due Process:

Plaintiff sues the five Volusia Sheriff's Office Defendants for due process violations. (*Id.* at 16–20.)  However, the amended complaint does not clarify whether

the violations concern substantive or procedural due process.   (*See id. passim.*)

Substantive due process "protects those rights that are 'fundamental'"—a limited class

of rights.   *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v.*

*Connecticut*, 302 U.S. 319, 325 (1937)); *see Collins & Co. v. City of Jacksonville*, 38 F. Supp.

2d 1338, 1342 (M.D. Fla. 1998) ("The fundamental rights protected by the substantive

component of the due process clause include most—but not all—of the rights

specifically enumerated in the Bill of Rights, as well as the various rights implied from

the Fourteenth Amendment; however, in all cases, fundamental rights are created only

by the Constitution." (citation and quotation omitted)).   The amended complaint does

not clearly connect a fundamental right with a due process claim.   (*See* Dkt. 84.)

Procedural due process "grants no substantive rights, but merely protects rights

which exist otherwise generally under [s]tate law," "ensur[ing] that, when a [s]tate

seeks to deprive a person of life, liberty, or property, the [s]tate follows an appropriate

procedure."   *Collins & Co.*, 38 F. Supp. 2d at 1341.   Procedural due process generally

"requires that the state provide fair procedures and an impartial decisionmaker before

infringing on a person's interest in life, liberty, or property" but requires only a post-

deprivation means of redress, not a pre-deprivation hearing, when "the deprivation is

the result of either a negligent or an intentional deprivation of property."   *McKinney*,

20 F.3d at 1561–63.   A section 1983 claim based on procedural due process has "three

elements: (1) a deprivation of a constitutionally[ ]protected liberty or property

interest[,] (2) state action[,] and (3) constitutionally[ ]inadequate process."   *Grayden v.*

*Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).   The amended complaint does not

plainly indicate the liberty or property interest (or interests) that Plaintiff seeks to vindicate, the process that he was (or was not) afforded regarding the interest, when the process occurred relative to the deprivation of the interest, or why the process was constitutionally inadequate. (*See* Dkt. 84.) For all these reasons, the amended complaint fails to state due process claims.

Unreasonable Search:

The amended complaint asserts claims of unreasonable search against Sergeant Stickles and Deputies Naylor, King, and Igo relating to the October 2021, March 2023, and April 2023 encounters. (*Id.* at 16–18, 20.) "[D]etermin[ing] whether a search . . . is reasonable under the Fourth Amendment" requires the court to "examine the totality of the circumstances" without regard for "a police officer's subjective motivations," *United States v. Lewis*, 674 F.3d 1298, 1303, 1304 n.3 (11th Cir. 2012), and "[w]here [an] alleged Fourth Amendment violation involves a search . . . pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner," *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Moreover, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

Although the amended complaint specifies that Deputies King and Igo lacked "a warrant for [Plaintiff's] residence" during the April 2023 encounter, (Dkt. 84 at 19–20), it also states that at that time, there was a warrant for Plaintiff's arrest due to his

failure to appear in court, (*id.* at 12–13).  Without contrary information, the court must conclude that the arrest warrant authorized the officers to enter Plaintiff's residence to arrest Plaintiff.  *See Payton*, 445 U.S. at 603.  The references to warrants and the lack thereof regarding the April 2023 encounter leave the court to speculate as to whether search or arrest warrants were issued for the October 2021 and March 2023 encounters.  (*See* Dkt. 84.)  However, Plaintiff must "raise a right to relief above the speculative level." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  Specifics about the presence and absence of warrants and related topics like probable cause and reasonable suspicion are necessary so that the court may conduct the required totality-of-the-circumstances inquiry for each of the October 2021, March 2023, and April 2023 encounters. Additionally, the amended complaint is unclear about what was searched during the March 2023 encounter.  (*See, e.g.*, Dkt. 84 at 19.)  Absent sufficient information for reasonableness determinations, Plaintiff fails to state claims of unreasonable search.

Excessive Force:

The amended complaint brings claims of excessive force against Deputies Naylor, King, and Igo relating to the October 2021 and April 2023 encounters.  (*Id.* at 16, 20.)[5]  With respect to the October 2021 encounter, the amended complaint states that Deputy Naylor trained her gun on Plaintiff and his child during questioning.  (*Id.*

---

[5] It is unclear whether any of Plaintiff's excessive force claims relate to the March 2023 encounter that allegedly involved Deputy Igo acting at Sergeant Stickles's instruction. (*See* Dkt. 84 at 17, 19–20.) To the extent that Plaintiff has intended to raise an excessive force claim related to this encounter, he has failed to do so given the lack of clarity in his pleading.

at 16.)  It does not state that Deputy Naylor used, or attempted to use, the gun, and no other misconduct alleged in conjunction with the October 2021 encounter verges on excessive force.  (*See id. passim*.)  With respect to the April 2023 encounter, the amended complaint states that in arresting Plaintiff pursuant to a warrant for his failure to appear in court, Deputies King and Igo broke down his front door and assaulted him inside his home.  (*Id.* at 17, 19–20.)  Plaintiff does not elaborate upon the assault. (*See id.*)

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation omitted).  This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quotation omitted).  As with an unreasonable search claim, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397 (quotation omitted).

As discussed above in connection with his unreasonable search claims, Plaintiff

does not describe the October 2021 and April 2023 encounters in sufficient detail to permit the court to engage in the required totality-of-the-circumstances inquiry. Accordingly, Plaintiff fails to state excessive force claims under section 1983. Plaintiff also fails to state an excessive force claim against Deputy Naylor because a police officer's display of a firearm in the line of duty typically does not amount to constitutionally excessive force. *See Courson v. McMillian*, 939 F.2d 1479, 1495 n.26 (11th 1991) (observing that when "distinguish[ing] between the use or the attempted use of a weapon and mere display by an officer in the line of duty," the Fifth Circuit "was unwilling to find that the display of weapons, 'that only conditionally threatens actual force,' was excessive force . . . for an officer executing his responsibilities" (quoting *Hinojosa v. Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988))); *Jones v. Walsh*, 711 F. App'x 504, 507 (11th Cir. 2017) ("Officers are permitted to draw weapons when approaching and holding individuals for an investigatory stop when reasonably necessary for protecting an officer or maintaining order." (alteration adopted) (quotation omitted)); *Trucks v. City of Oneonta*, 2023 U.S. Dist. LEXIS 110524, at *14 (N.D. Ala. June 27, 2023) (holding that an officer "did not engage in excessive force by drawing his firearm and ordering [the p]laintiff to the ground").

Further, Plaintiff's conclusory allegations of assault do not state excessive force claims against Deputies King and Igo. *See Bright v. City of Tampa*, No. 8:19-cv-2347-T-35CPT, 2021 U.S. Dist. LEXIS 37999, at *11 n.5 (M.D. Fla. Jan. 22, 2021) (determining that the pro se plaintiff failed to state excessive force claims when he "ma[de] conclusory allegations that he was 'violently assaulted' or 'gang banged'

by . . . officers" but "d[id] not describe being hit, punched, kicked, or otherwise beaten during his arrest"); *Boglin v. Weaver*, CIVIL ACTION 00-0620-CB-L, 2001 U.S. Dist. LEXIS 3423, at *19 (S.D. Ala. Feb. 2, 2001) (holding that allegations that the defendants "assaulted and battered" the pro se plaintiff, without "other information," were too "vague and conclusory" to state a claim), *report and recommendation adopted by* 2001 U.S. Dist. LEXIS 3424, at *1 (S.D. Ala. Feb. 28, 2001); *Rideout v. Shelby Twp.*, 691 F. Supp. 3d 816, 834 & n.4 (E.D. Mich. 2023) (explaining that "[t]o the extent that [the plaintiff] br[ought] an excessive force claim," it failed because he "d[id] not plead any facts supporting . . . that the physical force used during the arrest was excessive" but "merely reiterate[d] that [the d]efendants 'committed a battery . . . through the physical, unlawful arrest' of [Plaintiff]").

Equal Protection:

The amended complaint brings an equal protection claim against Sheriff Chitwood.  (Dkt. 84 at 18–19.)  "The Equal Protection Clause [of the Constitution] 'is essentially a direction that all persons similarly situated should be treated alike.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  A section 1983 plaintiff may bring an equal protection claim on the theory that he "belongs to a protected class" or on the theory that he "is the only [person] being treated differently from all other similarly situated [persons]."  *Id.*  The latter theory creates "a 'class of one' equal protection claim."  *Id.*  For class of one claims, "a plaintiff must show that [he] has been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment." *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (quotation omitted). Courts "apply the similarly situated requirement with rigor" such that a class of one "plaintiff must ultimately show that [he] and [his] comparators are similarly situated in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker." *Id.* (cleaned up). Under either theory, an equal protection "plaintiff must prove discriminatory intent," which "may be established by evidence of a history of discriminatory official actions." *Adams v. Demopolis City Schs.*, 80 F.4th 1259, 1273 (11th Cir. 2023) (quotation omitted). Further, "[t]o hold a supervisory official or government entity liable, a plaintiff must show that the violation resulted from a custom or policy put in place by the supervisor or the entity," and "[t]he discriminatory practice must be so widespread as to put the supervisor or entity on notice of the need to act." *Id.*

The amended complaint does not make clear whether it asserts Plaintiff's membership in a constitutionally protected class or brings a class of one claim. (*See* Dkt. 84.) It also does not describe the pertinent class, identify the comparators for Plaintiff, discuss factors relevant to an objectively reasonable governmental decisionmaker, explain how Plaintiff and his comparators are similarly situated in light of such factors, or illustrate how Plaintiff was treated differently from his comparators. (*See id.*) Accordingly, the amended complaint fails to state an equal protection claim.

Leave to Amend:

The court rejects Perdue's cursory futility argument with respect to the section

1983 claims as well as the civil RICO claim.  (*See* Dkt. 89 at 2, 16.)  *See Harding*, 104 F.4th at 1300.  In addition, the five Volusia Sheriff's Office Defendants generally maintain that the dismissal of Plaintiff's claims should be with prejudice because the amended complaint contravenes the court's instruction that Plaintiff correct the deficiencies of the initial complaint that the magistrate judge identified in the recommendation.  (Dkt. 87 at 4–5.)  These Defendants also make cursory arguments that dismissal with prejudice is warranted because allegations against Sheriff Chitwood "are completely unmoored from any cognizable" section 1983 claim, (*id.* at 7), Plaintiff "has not provided sufficient factual detail" for his claims against Deputy Naylor, (*id.* at 9), and "without more, [Plaintiff] has not stated a claim for the violation of his constitutional rights based on [the officers' alleged misconduct] alone," (*id.* at 11–12).  The court rejects the latter arguments as insufficiently developed, *see Harding*, 104 F.4th at 1300, and, in any event, disagrees that any of the asserted bases support dismissal with prejudice at this time.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading before trial] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Given this rule, the court is inclined to allow Plaintiff to file a second amended complaint that corrects the deficiencies identified in this order.  The changes between the initial and amended complaints reflect Plaintiff's good-faith efforts to correct pleading deficiencies and mark progress, however slight.  (*Compare* Dkt. 1, *with* Dkt. 84.)  Although the "repeated failure to cure deficiencies by amendments previously allowed" is a basis for dismissal with prejudice, *Bryant v. Dupree*, 252 F.3d

1161, 1163 (11th Cir. 2001), this basis requires "amendments previously allowed"—plural—and Plaintiff has been allowed to amend his pleading only once thus far.  (*See* Dkt. 79; *see also* Dkt. 117 (denying Plaintiff leave to amend).)  Further, although futility is a basis for dismissal with prejudice, *Bryant*, 252 F.3d at 1163, amendment is not futile because as presently drafted, a pleading contains allegations "unmoored from" cognizable claims, (Dkt. 87 at 7), or lacks "sufficient factual detail," (*id.* at 9; *accord id.* at 11–12).  Rather, futility justifies denial of leave to amend when an amended pleading could not support cognizable claims with sufficient allegations.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the complaint as amended [would still be] subject to dismissal." (quotation omitted)).  Because the court is not convinced that a second amended complaint could not state plausible section 1983 claims, the section 1983 claims in the amended complaint are dismissed without prejudice.

## CONCLUSION

Accordingly:

1. Defendants' motions to dismiss (Dkts. 87 & 89) are **GRANTED in part and DENIED in part**.

2. All claims asserted directly under 18 U.S.C. §§ 201, 1341, and 1957 are **DISMISSED with prejudice**, and thus, Plaintiff shall not assert such claims in any future pleading in this case.  If Plaintiff intends to use sections 1341 and 1957 to establish predicate offenses for the civil RICO claim against Perdue, he shall clearly indicate that the sections refer to predicate offenses only.

3. Plaintiff's civil RICO claim and section 1983 claims are **DISMISSED without prejudice**.

4. Plaintiff may file a second amended complaint on or before December 20, 2024. If Plaintiff files a second amended complaint, he shall comply with all of the following directives:

   a. The court grants Plaintiff leave to file a second amended complaint so that he can add information in support of—and remove information unrelated to—his civil RICO claim against Perdue and his section 1983 claims against Perdue and the five Volusia Sheriff's Office Defendants in the amended complaint. (*See* Dkt. 84.)  Plaintiff may choose not to bring any or all of these claims in the second amended complaint, or he may choose to bring them all, if he can do so in good faith after he corrects the pleading deficiencies identified in this order.  However, Plaintiff shall not assert other claims in the second amended complaint, unless he first satisfies Federal Rule of Civil Procedure 16(b)(4) by demonstrating "good cause" and obtaining "the [court]'s consent."  Fed. R. Civ. P. 16(b)(4).

   b. Plaintiff shall eliminate from his second amended complaint all details unrelated to the claims that he asserts in the second amended complaint, and Plaintiff shall add details only as necessary to correct the pleading deficiencies identified in this order and otherwise state claims for relief.

   c. If Plaintiff still asserts the conspiracy to defraud or one of the six

encounters as a basis for a claim in his second amended complaint, he shall describe the facts related to the conspiracy or encounter only once in the second amended complaint.  He shall not, for example, describe the same conspiracy three times in slightly different ways.  (*See* Dkt. 84 at 6–8, 15; Dkt. 84-1 at 1.)

d.  For each section 1983 claim asserted in the second amended complaint, Plaintiff shall identify the constitutional right he alleges was violated and shall tailor his allegations to the elements of the cause of action associated with that right.

e.  In general, Plaintiff shall work to submit a pleading that complies with Federal Rule of Civil Procedure 8(a)(2) by presenting "a *short and plain* statement of the claim showing that [he] is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).   That said, when required under Federal Rule of Civil Procedure 9(b), Plaintiff shall "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

f.  If the second amended complaint brings a claim without correcting all pleading deficiencies identified in this order related to that claim or if the second amended complaint fails to comply with any of these directives, the court may dismiss the second amended complaint without notice to Plaintiff.

5.  If Plaintiff files a second amended complaint on or before December 20, 2024, the court will issue an Amended Case Management and Scheduling Order.

**ORDERED** in Orlando, Florida, on November 25, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties
Counsel of Record